Filed 6/13/16  P. v. McCarter CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B255174 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA132193) |
| v. | |
| NOLAN MCCARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Anthony J. Patti, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Defendant Nolan McCarter appeals from a judgment of conviction for possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a)). His sole contention on appeal is that he was denied the effective assistance of counsel because his trial counsel failed to object under Evidence Code section 352 to evidence that the testifying detectives knew him from prior arrests. We affirm.

## FACTUAL BACKGROUND

In the late evening on October 14, 2013, Los Angeles County Sheriff's Department Detectives Gerardo Magos and Jesus Urrutia were in the backyard of a vacant house looking into the backyard of an adjacent house on East 78th Street in Los Angeles. The two backyards were separated by a wrought iron fence that was partially boarded up with wood. Detective Magos thought the backyard of the 78th Street house had lighting at the back of the property, while Detective Urrutia said "[i]t was dark" with no light other than "maybe the moonlight."

Standing on debris to see over the fence, the detectives used their flashlights to see into the backyard of the 78th Street house. From that vantage point, the detectives saw defendant and numerous other African American men and women in the backyard. The detectives were about eight feet from defendant and saw him speaking to Keshean Moore. The detectives recognized defendant from previous contacts, including two arrests. When the detectives shined their flashlights into the backyard, defendant looked in their direction and appeared startled and nervous. Both detectives saw defendant open his hand and drop a plastic bindle to the ground. At that point, the detectives ordered the men and women to stop, and they scattered into and around the house. Detective Urrutia watched the bindle while Detective Magos drove around the block to the 78th Street house to recover it. The bindle contained 8.64 grams of methamphetamine. The detectives subsequently arrested defendant and Moore, who were inside the house.

## PROCEDURAL BACKGROUND

At trial, defendant moved to exclude evidence of his prior arrests by Detectives Magos and Urrutia on relevance grounds. Defense counsel did not argue that the

2

evidence should be excluded as unduly prejudicial under Evidence Code section 352. The prosecutor opposed the motion, arguing that evidence of prior contacts was relevant to show that the detectives were able to identify defendant. The trial court denied the motion, finding the evidence relevant to the issue of identification, but ordered the prosecutor "not to mention the subject matter of the arrest[s]."

During trial, the prosecutor briefly explored the prior arrests when questioning the detectives about their ability to identify defendant as the person who dropped the plastic bindle to the ground. In responding to the prosecution's case, defense counsel ultimately chose to exploit the prior contacts in her argument that the detectives lied about seeing defendant drop the bindle. In closing argument, counsel acknowledged that the detectives knew defendant from prior arrests, but she reminded the jury that defendant knew the detectives from those arrests as well. She argued that if defendant had possessed the bindle, he would not have dropped it right in front of the detectives knowing they could identify him, but instead would have brought it into the house and destroyed it there. Counsel suggested that the detectives were lying and may have planted the drugs.

The jury rejected the defendant's contention and convicted him of possessing a controlled substance. The trial court subsequently found that defendant had suffered two prior convictions for which he served prison sentences (Pen. Code, § 667.5, subd. (b)), one of which was for a serious or violent felony (*id*., §§ 667, subds. (b)-(i), 1170.12). The court sentenced defendant to the mid-term of two years, doubled as a second strike offender to four years, and dismissed the prior prison term enhancements. The felony conviction was later reduced to a misdemeanor pursuant to Proposition 47 (Pen. Code, § 1170.18).

## DISCUSSION

Defendant contends that his trial counsel was ineffective in neglecting to object to the evidence of his prior arrests as unduly prejudicial under Evidence Code section 352. To establish a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show (1) his or her trial counsel's performance was objectively deficient; and

3

(2) the deficiency was prejudicial in that it is reasonably probable that it produced the unfavorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674] (*Strickland* ); accord, *People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)

Even if defendant's trial counsel's performance was deficient in failing to object to the evidence as unduly prejudicial, no prejudice resulted from her failure to do so for two reasons. First, the prosecution did not emphasize the prior arrests. The prosecutor asked Detective Magos about the arrests in one page of questioning about his ability to identify defendant; and the prosecutor elicited from Detective Urrutia only that he knew defendant "from prior contacts." In closing argument, the prosecutor made only passing reference to the prior arrests, stating: "Remember they had prior contacts with him, they arrested him in the past. They know who he is. . . . So they are not mistaken when they see the defendant."

Second, the evidence supporting conviction was overwhelming. The prosecution presented uncontradicted testimony from two detectives who knew defendant and observed him dropping the plastic bindle containing methamphetamine. The defense offered no contrary evidence, but rather suggested that the detectives were lying and had planted the drugs. There was no evidence, however, that the detectives had a motive to engage in this misconduct. As for defendant's argument that it was against his penal interests to drop the bindle on the ground in the police's presence, this is true but hardly compelling given the undisputed evidence that he was startled and had no time to reflect.

## **DISPOSITION**

The judgment is affirmed.

BLUMENFELD, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.